**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

-----------------------------------------------------------------X
JAMES T. CELICO,

        Plaintiff,

    v.

F-SQUARED INVESTMENTS, INC.,
F-SQUARED INVESTMENT MANAGEMENT,
LLC, F-SQUARED ALTERNATIVE ADVISORS,
LLC, STEPHEN RICCI, LAURA P. DAGAN,
THOMAS MANN, DEBORAH DESKAVICH,
and HOWARD B. PRESENT,

        Defendants.

-----------------------------------------------------------------X

Civil Action No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff James T. Celico ("Plaintiff" or "Celico"), by and through his undersigned attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, counsel's investigation, which includes, without limitation: (a) a review and analysis of regulatory filings made by F-Squared Investments, Inc. ("F-Squared Investments"), F-Squared Investment Management, LLC ("F-Squared Management"), and F-Squared Alternative Advisors, LLC ("F-Squared Alternative") (collectively, the "F-Squared Defendants") with the United States Securities and Exchange Commission (the "SEC"); (b) a review and analysis of press releases, advertisements, promotional materials, and other reports issued and disseminated by the F-Squared Defendants; (c) a review and analysis of an SEC Complaint against Howard B. Present ("Present") and SEC administrative proceeding filings; (d) a review of an Order Instituting Administrative Cease-and-Desist Proceedings Pursuant to Sections 203(e) and 203(k) of the Investment Advisor Act of

1

1940, and Section 9(b) and 9(f) of the Investment Company Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order; and (d) a review of other publicly available information concerning the F-Squared Defendants.

## SUMMARY OF THE ACTION AND OVERVIEW

1. This action is brought on behalf of Celico, a former F-Squared Investments employee, to pursue remedies against the F-Squared Defendants and certain of their officers named as Defendants herein for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder for securities purchased and/or acquired by Celico from 2011 to 2012.

2. F-Squared Investments is an SEC registered investment adviser headquartered in Wellesley, Massachusetts. Among other things, F-Squared Investments provides various index products on a non-discretionary basis to unaffiliated third parties, and, separately, provides discretionary investment advisory services based on those index products to various separately managed account clients. F-Squared Investments licenses indexes and, upon information and belief, its AlphaSector indexes is one of the largest ETF-based strategy utilized in the United States.

3. F-Squared Investments is a wholly-owned subsidiary of F-Squared Management.

4. Throughout the relevant time period, Defendants made materially false and misleading statements regarding F-Squared Defendants' business including, without limitation, its investment strategy and its respective performance. In particular, the F-Squared Defendants made false and/or misleading statements and/or failed to disclose that, among other things, F-Squared Investments' AlphaSector strategy which claimed an expansive track record did *not*

have a track record for the period from April 2001 to September 2008 based upon *actual* investment performance.

5. On or about December 22, 2014, the SEC filed a Complaint in this Court alleging that Defendant Present "made materially false and misleading statements about "AlphaSector," the flagship product offered by F-Squared Investments, Inc." and that he engaged in "(a) fraudulent or deceptive conduct with respect to investment advisory clients, in violation of Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940…and Rule 206(4)-8 promulgated thereunder; and (b) the making of an untrue statements of material fact in reports filed with the Commission, in violation of Section 207 of the Advisers Act. Present also aided and abetted F-Squared's violation of Section 206(4) of the Advisers Act and Rule 206(4) thereunder (the advertising rule)" (the "SEC Complaint"). A true and correct copy of the SEC Complaint is annexed hereto as Exhibit "A."[1] (Exh. A ¶¶1 and 8). The allegations in the SEC Complaint concerning Present and F-Squared Investments' false and misleading statements to the public are adopted and incorporated as if fully stated herein.

6. The SEC sought: "(a) a permanent injunction prohibiting Present from further violations of the relevant provisions of the federal securities laws; (b) disgorgement of his ill-gotten gains, plus pre-judgment interest; and (c) a civil penalty due to the egregious nature of his violations." (*Id*. ¶9).

7. In or around the same time, the SEC issued an Order Instituting Administrative Cease-and-Desist Proceedings Pursuant to Sections 203(e) and 203(k) of the Investment Advisers Act of 1940, and Sections 9(b) and 9(f) of the Investment Company Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order (the "SEC

---

[1] Exhibit references will be stated hereinafter as "Exh. ___."

Order") against F-Squared Investments. A true and correct copy of the SEC Order is annexed hereto as Exhibit "B."

8. In the SEC Order, the SEC listed various admissions made by F-Squared Investments including, without limitation, that F-Squared Investments made "materially false claims in its AlphaSector advertisements and Forms ADV, namely that: the in/out ETF signals that form the basis of the AlphaSector index returns had been used to manage client assets from April 2001 to September 2008; and the in/out signals resulted in a track record that significantly outperformed the S&P 500 Index from April 2001 to September 2008." (Exh. B at Appendix A).

9. Among other things, the SEC issued a cease and desist order, censured F-Squared Investments, and ordered it to disgorge $30 million to the United States Treasury. (*Id.*).

10. As a result of Defendants' wrongful acts and omissions, F-Squared Management securities were sold at artificially inflated prices during the relevant period and Plaintiff suffered significant losses and damages on his investments in F-Squared Management securities. Accordingly, Plaintiff hereby brings claims against the F-Squared Defendants and certain of their senior executives and Directors that exercised control over the F-Squared Defendants during the relevant period.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

12. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and §27(c) of the Exchange Act (15 U.S.C. §78aa). Many of the acts complained of herein, including the

dissemination of materially false and misleading statements and reported, prepared by or with the participation, acquiescence, encouragement, cooperation, or assistance of Defendants occurred, at least in part, in this District. In addition, the F-Squared Defendants are headquartered in this District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephonic communications, and the facilities of the national securities markets.

## **PARTIES**

14. Plaintiff James T. Celico is an individual who was previously employed by F-Squared Investments, resides in Barrington, Rhode Island, and purchased F-Squared Management securities during the relevant time period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15. Defendant F-Squared Investments is a Delaware corporation with principal executive offices located in this District in Wellesley, Massachusetts. F-Squared Investments is an SEC registered investment adviser and operates as a sub-advisor and model manager. F-Squared Investments is a wholly-owned subsidiary of F-Squared Management.

16. F-Squared Management is a Delaware limited liability company with principal executive offices located in this District in Wellesley, Massachusetts.

17. F-Squared Alternative is a Delaware limited liability company with principal executive offices located in this District in Wellesley, Massachusetts.

18. Defendant Stephen Ricci served as a member of F-Squared Investments' Board of Directors at all relevant times.

19. Defendant Laura P. Dagan served as a member of F-Squared Investments' Board of Directors at all relevant times. In or around November 2014, Dagan replaced Present as Chief Executive Officer of F-Squared Investments.

20. Defendant Thomas Mann served as a member of F-Squared Investments' Board of Directors at all relevant times.

21. Upon information and belief, Defendant Deborah Deskavich served as Chief Financial Officer, and before that as Chief Compliance Officer, of F-Squared Investments at all relevant times.

22. Defendant Howard B. Present is a founder of F-Squared Investments and served as Chief Executive Officer of F-Squared Investments until his resignation in or around November 2014. F-Squared Investments admitted that Present made false and misleading statements to investors on behalf of F-Squared Investments.

23. Defendants Ricci, Dagan, Mann, Deskavich, and Present are referred to collectively as the "Individual Defendants," each an "Individual Defendant." The Individual Defendants, because of their positions with F-Squared, possessed the power and authority to control the contents of F-Squared's reports to the SEC, press releases, advertisements, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. The Individual Defendants made specific false and misleading statements and/or reviewed and approved F-Squared's reports, advertisements, and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to

material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

24. Each Individual Defendant's primary liability and control person liability arises from the following facts, among others: (a) the Individual Defendants were high-level executives at F-Squared during the relevant period and members of F-Squared's management team or had control thereof; (b) the Individual Defendants, by virtue of their responsibilities and activities as senior officers of the Company, were privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans, projections, and/or reports; (c) each Individual Defendant enjoyed significant personal contract and familiarity with the other Individual Defendants and were advised of, and had access to, other members of F-Squared's management team, internal reports and other data and information about F-Squared's finances, operations, and sales at all relevant times; and (d) the Individual Defendants were aware of F-Squared's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

## **SPECIFIC ALLEGATIONS**

25. In or around early 2011, Plaintiff consulted for an entity, Family Endowment Partners ("FEP"), an SEC registered investment advisory firm. FEP was an F-Squared Investments client and utilized F-Squared Investments' signals.

26. Through his relationship with FEP, Plaintiff met with Defendant Present, F-Squared Investments' Chief Executive Officer, and learned more about F-Squared Investments

and its products and services. Among such products, Plaintiff learned more about F-Squared Investments' "AlphaSector" model, its flagship product.

27. Among other things, Defendant Present made various misrepresentations to Plaintiff concerning F-Squared Investments' strategy and products, including, without limitation, AlphaSector and its *actual* historical performance.

28. In reliance upon the information provided to him by Defendant Present and based upon F-Squared Investments' press releases, reporting, and other promotional material concerning its products and strategies, Mr. Celico invested approximately $40,000 in an FEP account that utilized F-Squared Investments' AlphaSector to guide investments.

29. By and through his contact with the Defendants Present and F-Squared Investments, F-Squared Investments offered Plaintiff employment to serve as Managing Director of the Advisor/Wealth Division of Alternative, a wholly-owned subsidiary of F-Squared Management.

30. On April 7, 2011 at 8:51 a.m., Defendant Present sent an email to Plaintiff with the subject "Company Milestones" and, among other things, stated in the email that "as of 4/1/2011 we reached a ***ten year track record*** for Alpha Sector Premium Index, and AlphaSector Rotation Index" (emphasis added).

31. The same day, at 9:17 a.m., Plaintiff replied to Defendant Present's email with "Great stats Howard." Plaintiff relied upon Defendant Present's representations concerning F-Squared Investment's actual track record.

### F-Squared Investments Offered Celico Employment

32. In or around March 2011, relying upon Defendant Present's representations and F-Squared Investments' press releases, reporting, and other promotional material, Mr. Celico accepted and commenced his employment with F-Squared Investments.

33. As part of his inducement for employment by F-Squared Investments, Mr. Celico was assured he would be given the opportunity to become an equity holder in F-Squared Management.

### April 2012: Celico's First Options Grant

34. Indeed, on or around April 13, 2012, Mr. Celico was granted and ultimately purchased options to acquire 50,000 Common Units of F-Squared Management at $1.67 per Unit pursuant to a Notice of Option Grant and Option and Restricted Unit Agreement (the "First Option Units").

35. Mr. Celico paid $83,500 for the First Purchase Units, which vested immediately.

### June 2012: Celico's Second Options Grant

36. On or around June 1, 2012, pursuant to a Notice of Option Grant and Option and Restricted Unit Agreement, Plaintiff was granted options to acquire 60,000 Common Units of F-Squared Management at $1.67 per Unit (the "Second Option Units").

### November 2012: Celico's Third Options Grant

37. On or around November 1, 2012, pursuant to a Notice of Option Grant and Option and Restricted Unit Agreement (the "Third Notice"), Plaintiff was granted options to acquire 130,000 Common Units of F-Squared Management at $1.67 per Unit (the "Third Option Units").

38. Pursuant to the Third Notice, 65,000 Units could vest only after November 1, 2016 and under the condition that the assets under management of F-Squared Alternative totaled

at least $1.33 billion and the revenue generation of F-Squared Alternative was $33.33 million. The remaining Units would vest following the assets under management achieving at least $2 billion and revenue generation of $50 million.

39. In or around November 2012, Defendant Present advised F-Squared Investments employees, including Celico, that the Common Units price was expected to rise significantly and encouraged such employees to purchase additional Common Units. Indeed, the F-Squared Defendants even made loans to other employees to purchase such Common Units. Additionally, F-Squared Investments accelerated other employment contracts to permit a start date of 2012 so such employees could benefit from the expected 2012 prices.

40. The F-Squared Defendants arranged for credit facilities for employees through First Republic

41. In or around December 2012, Plaintiff paid $317,300 to purchase the Second Option Units and Third Option Units, a total of 190,000 Common Units.

42. On or around July 25, 2014, the Option and Restricted Unit Agreement dated November 1, 2012 was amended to change the date to October 17, 2015 to accomplish the four (4) year timeframe and stated asset under management and revenue goals for the Units to vest.

43. The Second and Third Options Units, although purchased by Plaintiff, remain unvested.

### March 2015: F-Squared's Reorganization

44. On or around March 19, 2015, F-Squared Investments commenced employment layoffs and a corporate re-structuring. Among other things, the Alternative Investments division, of which Celico was the Managing Director, was eliminated.

45. By and through this elimination, F-Squared Investments completely frustrated Celico's ability to satisfy the conditions precedent to vesting of his F-Squared Management Second Purchase Units and Third Purchase Units and rendered such conditions impossible to achieve.

46. F-Squared Investments did not terminate Celico's employment at that time but instead offered him a position to serve as its Chief Investment Solutions Officer.

### Celico's Resignation

47. On or about April 17, 2015, due to Plaintiff's dissatisfaction with his role change and no longer wishing to be affiliated with an entity that admittedly made fraudulent material misstatements and omissions to investors, himself included, Plaintiff resigned from F-Squared Investments.

### COUNT I

**(Violation of Section 10(b) of the Exchange Act
And Rule 10b-5 Against the F-Squared Defendants)**

48. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff, a purchaser of F-Squared Management Common Units.

50. Plaintiff has suffered damages in that, in reliance upon Defendants' statements of material fact and/or omissions of material facts, Plaintiff paid artificially high prices for F-Squared Management Common Units. Plaintiff would not have purchased the F-Squared

Management Common Units at the prices he paid, or at all, if he had been aware that the prices had been artificially and falsely inflated by Defendants' misleading statements and/or omissions.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchases of F-Squared Management Common Units.

## COUNT II

### (Violation of Section 20(a) of the Exchange Act Against the Individual Defendants)

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     The Defendants herein acted as controlling persons of the F-Squared Defendants within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their respective ownership interests, board positions and/or control of compensation, these Defendants had the power to influence and control and did influence and control, directly and/or indirectly, the decision-making of the F-Squared Defendants, including the content and dissemination of the various statements which Plaintiff contents and Defendants admitted are false and misleading. These Defendants were provided with or had unlimited access to copies of the F-Squared Defendants' reports, press releases, public filings and other statements alleged by Plaintiff, and admitted by Defendants, to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     Specifically, each of these Defendants had direct and/or supervisory involvement in the operations the F-Squared Defendants and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged

herein, and exercised the same. The Defendants culpably participated in the commission of the wrongs alleged herein.

55. As alleged above, the F-Squared Defendants violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, Defendants herein are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchase of F-Squared Management Common Units.

## COUNT III

### (Fraudulent Misrepresentation Under Massachusetts Law)

56. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57. Defendants made false representations of material facts with knowledge of its falsity to Plaintiff to induce and/or cause him to accept employment by F-Squared Investments.

58. Plaintiff relied upon Defendants' false misrepresentations, including, without limitation, the track record based upon actual historical results of AlphaSector, its flagship product, and accepted the representations made by Defendants as true and accepted employment by F-Squared Investments.

59. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff suffered damages including, without limitation, reputational damage of having been affiliated with F-Squared Investments, which, subsequent to the commencement of Plaintiff's employment, admitted to fraud.

**WHEREFORE**, Plaintiff prays for relief and judgement, as follows:

A. Awarding compensatory damages in favor of Plaintiff against Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, but believed to exceed $1,000,000, including interest thereon;

B. Awarding Plaintiff his reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

C. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 18, 2015

Respectfully submitted,

**GUSRAE KAPLAN NUSBAUM PLLC**

By: /s/ Martin H. Kaplan
Martin H. Kaplan, Esq.
*Pro hac vice application pending*
120 Wall Street, 25th Floor
New York, New York 10005
Tel: (212) 269-1400
Fax: (212) 809-5449
Email: mkaplan@gusraekaplan.com

*Attorneys for James T. Celico*

MCLANE, GRAF, RAULERSON &
MIDDLETON, PROFESSIONAL
ASSOCIATION

Date: June 18, 2015

By: /s/ Adam M. Hamel
Adam M. Hamel
300 TradeCenter, Suite 7000
Woburn, MA 01801
781-904-2710
adam.hamel@mclane.com

101462\9311842.v1